IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

MARSHA A. TYLER,                  )
                                  )
            Plaintiff,            )
                                  )
      v.                          )   Case No. 11 C 9262
                                  )
COMPREHENSIVE HEALTH              )
MANAGEMENT, INC.,                 )
                                  )
            Defendant.            )

## MEMORANDUM OPINION AND ORDER

Marsha Tyler ("Tyler") has sued her former employer Comprehensive Health Management, Inc. ("Comprehensive") for assertedly (1) failing to accommodate her disability and (2) firing her because of her disability, both in violation of the Americans with Disabilities Act ("ADA," 42 U.S.C. §§ 12101 et seq.[1]). Comprehensive now moves for summary judgment on all counts under Fed. R. Civ. P. ("Rule") 56. Tyler opposes the motion.[2] For the reasons set out in this opinion, Comprehensive's motion is granted.

---

[1] It is agreed that the Americans with Disabilities Act Amendments Act of 2008 does not apply to Tyler's claim, as the relevant facts occurred before that Act's passage. Hence all citations to and quotations from the ADA (cited "Section --" employing the numbering from Title 42 rather than the statute's internal numbering) and to its regulations (cited "Reg. § --," omitting the prefatory 29 C.F.R) are drawn from the 2007 (pre-amendment) version of the Act and its regulations.

[2] This District Court's LR 56.1 requires parties to submit evidentiary statements and responses to such statements to highlight which facts are disputed and which facts are agreed upon. Tyler's and Comprehensive's submissions are respectively cited "T." and "C." followed by appropriate designations: LR 56.1 statements as "St. ¶ --," responsive statements as "Resp. St. ¶ --," and memoranda as "Mem. --," "Resp. Mem. --" and "Reply Mem. --."

**Factual Background**

What follows is a summary of the relevant facts that are undisputed, except where noted otherwise. Tyler was an employee of Comprehensive from June 6, 2005 to July 11, 2008 (C. St. ¶ 8; P. St. ¶47). She started as a "benefits consultant," a company euphemism for saleswoman (C. St. ¶ 9). Her job was to sell Medicare-backed health insurance policies to senior citizens (id.), and to keep her job she had to reach monthly sales goals (Johnson Dep. 100:13-100:16). On November 28, 2007 she was promoted to "senior benefits consultant," a saleswoman with a higher monthly sales quota and presumably a higher earning potential (C. St. ¶¶ 18, 23; Tyler Dep. 29:2-29:6). But she quickly fell behind and was unable to meet her new sales numbers in December 2007 (T. Resp. St. ¶ 27), part of which month she spent on vacation (T. St. ¶¶ 14, 20). Signs of a personality conflict with her supervisor Debra Johnson ("Johnson") also appeared around that time, with Johnson writing up Tyler on December 27 for insubordination and a poor attitude after the two argued about Tyler's ability to take a vacation day (Tyler Dep. Ex. 10). Tyler attributed her growing personality conflict with Johnson to Johnson's jealousy over male co-worker Lynn Lodge ("Lodge") (Tyler Dep. 36:11-36:23).

Tyler then fell a whole 50% short of her January 2008 quota (C. St. ¶ 28[3]), although that appears to have been partially because she missed an entire week of work due to illness (T. St.

---

[3] In her Response to Defendant's Statement of Undisputed Facts, Tyler often fails to provide record citations showing that she has a factual basis for disputing Comprehensive's version of events, in direct contravention of LR 56.1(b)(3)(B). In those few instances where Tyler's unsupported objections amount to anything other than irrelevant quibbles, this Court's own review of the record has turned up little that would cast doubt on Comprehensive's statements (see, e.g., T. Resp. St. ¶ 67, which contests Comprehensive's corresponding statement but is itself irreconcilable with Tyler's uncontradicted testimony at Tyler Dep. 103:5-103:6). Accordingly this Court will exercise its discretion under LR 56.1 and treat Tyler's non-conforming responses as admissions that Comprehensive's statements of fact are undisputed (see the per curiam opinion in Gosey v. Aurora Med. Ctr., 749 F.3d 603, 605 (7th Cir. 2014)). As for the instant factual contention -- the existence of a higher quota for senior benefits consultants --

Ex. I at 0065).  Later, in February 2008, she went to the doctor for joint and back pain caused by work-related stress (Tyler Dep. 9:15-9:18).  Then from March 17 to 31 she took two weeks of medical leave, this time for a flu-like virus (Tyler Dep. 43:1-43:7, 44:17-44:20).  Comprehensive considered that leave to be protected under the Family and Medical Leave Act ("FMLA," 29 U.S.C. §§ 2601 et seq.) (C. St. ¶ 31).  When Tyler returned from being sick with the flu, she was presented with a "performance improvement plan," another company euphemism, this one signifying an employee's final chance to improve sales before being demoted or fired (see C. St. ¶ 34).  Tyler's performance improvement plan was backdated to March 1 and required her to make 15 more sales by April 15 (T. Resp. St. ¶ 33).  Thus Tyler had 13 days from when she received the "plan" in which to complete her 15 new sales.  Tyler failed to meet her quota and was demoted back to the benefits consultant level on April 23, 2008, with an effective demotion date of April 16 (T. Resp. St. ¶¶ 28-32, 34-35).

That same day -- April 23 -- Tyler suffered a mental breakdown with symptoms of anxiety and depression (Tyler Decl. ¶ 33).  She made one last request to have her supervisor changed (Tyler Dep. 116:15-116:21), then took leave under the FMLA (id. 49:17-49:19).[4]  Tyler forwarded her doctor's notes to Comprehensive's human resources department throughout her medical leave (C. St. ¶¶ 41-45).  Each of those notes, from a Dr. Wolf, consistently reflected an expected return-to-work date just a few weeks in the future (id.).  Tyler exhausted her remaining FMLA leave time on July 2, 2008 (id. at ¶¶ 39-40, 46).  When she did not return to work on

---

Tyler asserts without citation to the record that she never knew she had a quota (T. Resp. St. ¶ 28).  But in fact, Tyler herself testified that she knew that she would have a higher monthly quota as a senior benefits consultant than she did as a benefits consultant (Tyler Dep. 29:2-29:6).

[4] There was some confusion as to the exact date that Tyler's period of FMLA leave began.  But Tyler clearly attested that her disabling condition commenced on April 23 (Tyler Dep. 50:24-50:25).

July 2 she was fired, although she did not receive notice of her firing until July 11 (C. St. ¶ 50; T. St. ¶ 47). Dr. Wolf cleared Tyler to return to work on July 21 (C. St. ¶ 70; Tyler Dep. 68:17-68:19). Despite the fact that Tyler's termination letter invited her to reapply for work once she was medically cleared, she did not reapply (Tyler Dep. 68:6-68:10, 68:20-68:22).

Tyler filed a charge with the EEOC on July 29, 2008 (C. St. ¶ 1) and received permission to sue on September 30, 2011 (id. ¶ 2). She filed this suit on December 29, 2011.

## Legal Standard

Every Rule 56 movant bears the burden of establishing the absence of any genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322–23 (1986)). For that purpose courts consider the evidentiary record in the light most favorable to nonmovants (here Tyler) and draw all reasonable inferences in their favor (Lesch v. Crown Cork & Seal Co., 282 F.3d 467, 471 (7th Cir.2002)). Courts "may not make credibility determinations, weigh the evidence, or decide which inferences to draw from the facts" in resolving motions for summary judgment (Payne v. Pauley, 337 F.3d 767, 770 (7th Cir.2003)). But a nonmovant must produce more than "a mere scintilla of evidence" to support the position that a genuine issue of material fact exists, and "must come forward with specific facts demonstrating that there is a genuine issue for trial" (Wheeler v. Lawson, 539 F.3d 629, 634 (7th Cir.2008)). Ultimately summary judgment is warranted only if a reasonable jury could not return a verdict for the nonmovant (Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)).

## Disability

To defeat Comprehensive's motion, Tyler naturally must first show that there are sufficient facts to support a finding that she was disabled within the meaning of the ADA. As will be seen, Tyler cannot do so, and so Comprehensive is entitled to summary judgment.

"Disability" has three possible definitions under ADA Section 12102(2):

(A) a physical or mental impairment that substantially limits one or more of the major life activities of such individual;
(B) a record of such an impairment; or
(C) being regarded as having such an impairment.

Because Tyler does not contend that she had a record of an impairment or was regarded as having an impairment, the question is whether she actually had an impairment that substantially limited a major life activity.

EEOC regulations set out definitions of both "major life activity" and "substantially limits," and our Court of Appeals follows those definitions in ADA cases (see, e.g., Steffen v. Donahoe, 680 F.3d 738, 745-46 (7th Cir. 2012)). As for major life activities, they include but are not limited to those listed by the EEOC in Reg. § 1630.2(i): "caring for oneself, performing manual tasks, walking, seeing, hearing, speaking, breathing, learning, and working." And as for "substantially limits," Reg. § 1630.2(j)(2) calls for factfinders to weigh three factors when considering whether a particular impairment reaches that level:

(i) The nature and severity of the impairment;
(ii) The duration or expected duration of the impairment; and
(iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

Tyler's argument never states that she was disabled or suffered any particular impairments before April 23, 2008 (Tyler Dep. 101:5-101:11, Tyler Decl. ¶ 33) -- indeed she testified that she did not become disabled until she was demoted on April 23 (Tyler Dep. 103:5-103:6). Nothing in the record contravenes that self-assessment. Tyler adduced no evidence that her anxiety, depression, high blood pressure or tremors substantially impaired her in a major life activity before April 23. She did go to the doctor in February for stress-related pain (Tyler Dep. 9:15-9:18), but she has produced nothing that would shed light on whether that caused an

impairment. She also missed work because of illness in January and March, but those absences were due to bronchitis and then a virus (id 43:1-43:7, 44:17-44:20; C. St. Ex. I at 0065), hardly the stuff of a substantial impairment in a major life activity.

Tyler's work performance did decline from December 2007 until April 23, 2008, which might cause one to question whether her depression and anxiety were causing a substantial impairment in the major life activity of working at that time. But to be impaired in the major life activity of working, one must be "substantially limited" in her ability to perform many jobs, not just a single job (Reg. § 1630.2(j)(3)(i)):

> (i) The term substantially limits means significantly restricted in the ability to perform either a class of jobs or a broad range of jobs in various classes as compared to the average person having comparable training, skills and abilities. The inability to perform a single, particular job does not constitute a substantial limitation in the major life activity of working.

Here Tyler has presented no evidence that she was restricted in her ability to perform a class or broad range of jobs. Instead she wrote in a letter to Comprehensive's human resources department that her performance decline was the result of the unattainable sales goals Johnson required her to meet and the dead-end sales visits to which Johnson assigned her (see P. St. Ex. I at 0063-0066). Tyler also stated in that letter that her fear that Johnson might demote or fire her caused her stress that affected her performance negatively (id. at 0066). While Tyler's counsel seems to think those facts support a finding that Comprehensive could be liable under the ADA (see T. Memo. 4-12, 15-17), they actually defeat any such finding. That much is clear from Weiler v. Household Fin. Corp., 101 F.3d 519, 524 (7th Cir. 1996) (punctuation and internal citation omitted), a case nearly on all fours with this one:

> The major life activity of working is not "substantially limited" if a plaintiff merely cannot work under a certain supervisor because of anxiety and stress related to his review of her job performance. . . . Moreover, exclusion from one

6

position of employment does not constitute a substantial limitation of a major life activity.

Tyler's problems at work were all specific to her particular position and to her particular supervisor, and there was no evidence whatever that she experienced a more general restriction in her ability to work. Hence she was not substantially limited in the activity of working before her final sick leave, which began on April 23, 2008.

That means that Tyler's last hope for showing she had a disability within the meaning of the ADA lies in the period on and after April 23. Tyler avers that once she was demoted on that date, she suffered anxiety and depression so intense that she became totally unable to work or even to groom herself and perform other basic tasks of self-care (Tyler Decl. ¶ 33). Such attestations clearly suffice to show both that she was impaired in the major life activities of working and self-care, and that her condition was severe (which satisfies the first part of Reg. § 1630.2(j)(2)).

Unfortunately for Tyler, while the anxiety and depression symptoms she began to suffer as of April 23 were severe, they were also temporary. As Reg. § 1630.2(j)(2)(ii) and (iii) make clear, even severe conditions rise to the level of a disability only when they have a long duration or expected duration:

> (2) The following factors should be considered in determining whether an individual is substantially limited in a major life activity:
>
> * * *
> (ii) The duration or expected duration of the impairment; and
> (iii) The permanent or long term impact, or the expected permanent or long term impact of or resulting from the impairment.

That formulation received the Supreme Court's approval in <u>Toyota Motor Mfg., Ky., Inc. v. Williams</u>, 534 U.S. 184, 198 (2002), where the Court held that in addition to being severe, an "impairment's impact must also be permanent or long term" to meet the "substantially limits"

7

requirement of the ADA.[5] And that same year <u>Ogborn v. United Food & Commercial Workers Union, Local No. 881</u>, 305 F.3d 763, 767 (7th Cir. 2002) (citations omitted) applied that rule specifically to depressive episodes of limited duration:

> But intermittent, episodic impairments such as broken limbs and appendicitis are not disabilities, nor are isolated bouts of depression.

<u>Ogborn</u>, <u>id.</u> at 767-68 found that a plaintiff's eight-week bout of depression was simply too short to amount to a substantial impairment, and so it granted summary judgment to the defendant.

On the record before this Court no reasonable finder of fact could conclude that Tyler's own bout of depression and anxiety was "permanent or long term" (<u>Toyota</u>, 534 U.S. at 198) or that it was expected to be. Two undisputed matters of fact make that clear.

First and most obviously, Tyler was severely restricted in her ability to work and care for herself for only about three months, from April 23 to July 21, 2008. She admitted as much in a declaration submitted by her attorney (Tyler Decl. ¶ 33). Barely three months of depression and anxiety -- no matter how severe -- clearly do not amount to the "permanent or long term" impairment required under the pre-amendment version of the ADA (<u>Toyota</u>, 534 U.S. at 198). Conditions longer lasting than Tyler's ordeal have been found not "permanent or long term" as a matter of law by our Court of Appeals (e.g., <u>Serednyj v. Beverly Healthcare, LLC</u>, 656 F.3d 540, 555-56 (7th Cir. 2011), which involved an impairment lasting at least four months).

Second and just as importantly, the <u>expected</u> duration of Tyler's condition was no greater than its actual duration. Notes from Tyler's physician, Dr. Wolf, record a running series of expected return-to-work dates that are always just a few weeks in the future. Dr. Wolf's first note, dated April 24, 2008, reads in relevant part, "May resume work on: . . . reassess [patient]

---

[5] <u>Toyota</u> was overturned legislatively with the passage of the ADA Amendments Act, but again the pre-amendment version of the ADA is at issue in this case, and so <u>Toyota</u> applies.

next appointment, 2-3 weeks" (Tyler Dep. Ex. 16 at 00212). Just six days later another note from Dr. Wolf says that Tyler "[h]as been ill or injured and unable to work from last statement [apparently April 24] thru 5-23-08" (id. at 00210). While that same note says the doctor's return-to-work date was made "pending appointment week of May 19th" (id.), the unavoidable inference is that Tyler's doctor thought her bout of anxiety and depression was capable of resolution within a few weeks. And even if that note did contain some ambiguity about whether Tyler's condition was expected to be temporary, Dr. Wolf's final two notes remove any doubt: a note dated June 2 gives a return-to-work date of June 24, and another dated June 20 gives the return-to-work date that turned out to be accurate: July 21, 2008 (id. at 00147, 00211).

Although it is clear from Tyler's shifting return-to-work dates that Dr. Wolf was never exactly sure how long Tyler's condition would last, it is equally clear that at any given point he always thought it capable of resolution within another month -- and as it turns out, it lasted only three. That is enough to defeat any claim that Tyler's condition was expected to be long-term. But even if there were some lingering ambiguity in Dr. Wolf's notes, it would amount to no more than a "scintilla of evidence" that could not possibly support a jury verdict in favor of Tyler, and hence could not defeat a motion for summary judgment (see Anderson, 477 U.S. at 251-52).

Such is the evidence of record that even indirectly addresses the duration or expected duration of Tyler's anxiety and depression. So the only reasonable conclusion is that Tyler's condition was temporary. As already noted, temporary conditions are not disabilities under the pre-amendment version of the ADA (Ogborn, 305 F.3d at 767).

Because that serves to cut Tyler's claim off at the knees, this opinion need not rule on the other arguments Tyler advances in support of her claim, some of which would require the

9

resolution of novel questions of law[6] and others of which this Court would find meritless in any case. Those in the latter group not only delve far too deeply into every slight Tyler said she suffered at the hands of Johnson, but also lack any connection to a real or perceived disability on Tyler's part -- a fact that Tyler rather stunningly admitted in her deposition (see Tyler Dep. 37:15-37:22).

For better or worse, Congress has not prescribed relief for an employee such as Tyler, who appears to have suffered real anguish over her experiences at Comprehensive. Instead a plaintiff's ADA claim must fail unless she can show that she was under a disability within the meaning of that Act (see, e.g., Serednyj, 656 F.3d at 556). Because Tyler has failed to make such a showing, Comprehensive did not incur any liability under the ADA when it refused to transfer her to a different supervisor or when it fired her.[7]

---

[6] For example, this Court would need to decide whether Tyler's April 23 request to transfer to a different supervisor was a request for reasonable accommodation. Weiler, 101 F.3d at 526 suggested in dicta that such a request cannot ever be a reasonable accommodation as a matter of law. But Weiler's rationale for so stating was partially undercut by EEOC v. United Airlines, Inc., 693 F.3d 760, 764 (7th Cir. 2012), which held that reassignment of disabled workers to open positions will typically be a reasonable accommodation. Similarly, the parties briefed (at this Court's order) the question whether Tyler's version of events satisfied the "because of . . . disability" requirement of the ADA (Section 12112(a)). Tyler has argued throughout her submissions that the real reason for her firing was Johnson's personal vendetta and that her disability was merely a convenient excuse for her firing -- that is, it was a cover-up or pretext. It is unclear whether a false reason officially relied upon could ever be the kind of but-for cause the pre-amendment version of the ADA requires (see Serwatka v. Rockwell Automation, Inc., 591 F.3d 957, 963 (7th Cir. 2010); and see Burrage v. United States, 134 S. Ct. 881, 888 (2014), which sets forth an especially expansive view of but-for causation). But this opinion need not and does not resolve that question of law.

[7] Though it will be cold comfort to Tyler, she had a colorable claim that Comprehensive interfered with her FMLA rights by failing to adjust her sales quotas to account for time spent on FMLA-protected medical leave (see T. St. Ex. G; Pagel v. Tin, Inc., 695 F.3d 622, 629 (7th Cir. 2012)). But in that respect the limitations period for bringing an FMLA claim is at most 3 years (Section 2617(c)), and her action was not filed in this court until December 29, 2011, roughly 3 years and 8 months after her cause of action accrued on April 23, 2008 (the date Tyler was demoted for failing to meet her sales goals). While she did file her charge with the EEOC within

**Conclusion**

In sum, Tyler has failed to show that there is any dispute of material fact that would entitle her to relief under the ADA. Accordingly Comprehensive Health Management, Inc. is entitled to a judgment as a matter of law, and its motion for summary judgment is granted. This action is dismissed.

                                                  _____
                                                  Milton I. Shadur
                                                  Senior United States District Judge

Date: January 6, 2015

---

the limitations period, it is the Secretary of Labor and not the EEOC who has power to enforce the FMLA (Section 2617(b)). No Court of Appeals has ruled directly on the question whether filing with the EEOC preserves an FMLA claim, but this Court is persuaded that the reasoning of Johnson v. Ry. Exp. Agency, Inc., 421 U.S. 454, 465-66 (1975) would control. That case held that filing Title VII charges with the EEOC failed to toll the limitations period for a claim under Section 1981 of the Civil Rights Act of 1866, an act that, like the FMLA, the EEOC has no authority to enforce. Hence any potential claim by Tyler under the FMLA would now be time-barred.